FIRST STATE BANK OF OLDHAM, Appellant, v. THOMPSON et al., Respondents.

(142 N. W. 248.)

**Partnership—Liability of Third Persons—Sufficiency of Evidence.**

In an action on a promissory note given by the manager of a grain elevator owned by himself and two others, but operated solely by him, evidence held insufficient to show a partnership between the owners so as to render one of them not operating the elevator liable on the note, even though he, as agent of the manager while temporarily conducting the business for him in his absence, executed, in a purported firm name including said principal, a prior note in payment of which the note in suit was given; it not appearing that such person so signing furnished or agreed to furnish any part of the capital for operating the elevator, or that there was any agreement for a partnership for any company name.

(Opinion filed July 1, 1913.)

Appeal from Circuit Court, Lake County. Hon. Joseph W. Jones, Judge.

Action by the First National Bank of Oldham against Henry Rippe, administrator of the estate of E. A. Rippe, deceased, and W. I. Thompson. From a judgment in favor of defendant Thompson, upon a directed verdict, and from an order denying a new trial, plaintiff appeals. Affirmed.

*Null & Royhl,* for Appellant.

The defendant Thompson had personally executed the note by signing "E. A. Rippe Co." He was one of the owners of the elevator property. The fact that the plaintiff relied on the credit of defendant, Thompson, as one of the parties to the transaction,

in extending the credit of $2,500 was material in determining the issues in this cause.

Section 484, Political Code, requires warehousemen to make a written application to the railroad commissioners for a license. This application must state, among other things, "the individual name of each person interested as owner or principal in the management of the same." Exhibit "D" was such application. Woods v. Courter, 1 Dallas, 141 Co. Op. 1, page 73.

It appears that Thompson and Larkin had placed the management of this elevator in Rippe's hands for their mutual benefit. Here was express authority. Rippe was authorized to run this elevator and hence any act of his in transacting the business entrusted to him is binding on all.

Under all the evidence, there were issues to be submitted to the jury. In fact under all the testimony the court would have been justified in directing a verdict for plaintiff.

The fact that Thompson signed the firm name to the note precludes him from denying knowledge on his part that the business was being conducted under the firm name.

*Hans Urdahl,* and *Aikens & Judge,* for Respondent.

Whatever Thompson asked, appellant actually placed the money to the individual credit of E. A. Rippe. Thompson signed the note in that way because appellant directed him so to do.

It is established by the uncontradicted evidence of Larkin and Thompson that neither of them were ever engaged with Rippe in the grain business.

POLLEY, J. This action is against Henry Rippe, administrator of the estate of E. A. Rippe, deceased, and W. I. Thompson. The plaintiff and appellant, First State Bank of Oldham, bases its cause of action upon the following allegation in its complaint: "That heretofore, and on or about the 16th day of August, 1907, the plaintiff loaned to the defendant W. I. Thompson and E. A. Rippe, now deceased, the sum of $2,500, which sum said W. I. Thompson and E. A. Rippe agreed to pay plaintiff, together with interest at 6 per cent.;" that $1,088.66 of said sum had been repaid; and that the defendants were still indebted to plaintiff for the balance.

The facts, as disclosed by the evidence, are: That during the fall of 1906 the defendant W. I. Thompson, one John Larkin,

and the decedent, E. A. Rippe, became the owners of a certain flouring mill building situated on the railway right of way at the town of Oldham. That they removed the mill machinery therefrom, and converted the building into a grain elevator. That thereafter, during the remainder of the year 1906 and continuously until his death, which took place in 1910, the said E. A. Rippe operated said elevator—buying and selling grain—and that he conducted the business under the name of E. A. Rippe Co., but that neither Thompson nor Larkin contributed any of the capital used in carrying on the said business, nor took any part whatever in the management thereof. There never was any partnership agreement of any kind existing between these parties, neither was the building ever leased to Rippe, except that Larkin and Thompson permitted him to use it as a grain elevator, and that he was to compensate them from the proceeds of the business. There was no stated amount, however, that they were to have and no fixed proportion of the profits. He was simply to pay them "what was right" for the use of the building. Rippe was also operating an elevator at Madison and one at Saranac; and the defendant Thompson was engaged in the grain business at Madison, and, in connection with Larkin, was operating an elevator at Oldham, a different elevator, however, from the one Rippe was operating. During the latter part of July, 1907, Rippe left home to go to the western part of the state. He intended to return in five or six days, and during his absence the defendant Thompson undertook to look after his business affairs for him. He did not get back as soon as he expected; his absence being prolonged for something like three weeks. During this absence a meeting occurred between respondent Thompson and the witness J. J. Adkins, who was the president of the plaintiff bank, relative to having the bank advance some money to take care of Mr. Rippe's business until his return. Afterward and on the 12th day of August, 1907, respondent Thompson wrote the plaintiff, from Madison, as follows: "Mr. Rippe is away, and I don't expect him back until about September 1st. Kindly let me know if you will place some money to the credit of E. A. Rippe Co., about the 15th, or pay what checks we may draw until his return, when he will give you a note and we, of course, will pay the interest on the overdraft. [Signed] W. I. Thompson." On the 14th of August plaintiff, by

its president, J. J. Adkins, replied to the above letter as follows: "With reference to the $2500.00 of which we were talking will say that we are herewith enclosing you a note which you may execute by signing E. A. Rippe Co., by yourself, and return to us and we will give you credit on our books for that amount, this can be done until Mr. Rippe returns and if you so choose then may have him give the note. We do not like overdrafts. * * * [Signed] J. J. Adkins." In response to this letter, defendant Thompson on the 15th of August returned to plaintiff the note referred to in the above letter, being a demand note for $2,500, drawing 6 per cent. interest, signed: "E. A. Rippe Co., per W. I. Thompson." Nothing appears to have been said about the note on Mr. Rippe's return, but on the 30th day of April, 1908, the plaintiff wrote a letter addresed to "Mr. E. A. Rippe, Madison, S. D.," asking him for 8 months and 15 days interest on "your" note, amounting to $106.25; and on the 5th day of June, 1909, the plaintiff wrote to Mr. Rippe, as follows: "Mr. E. A. Rippe, Esq., Madison, S. D.—Dear Sir: As we talked this morning, we are herewith handing to you, for signature, note of $2,500.00. The interest on the old note amounts to $162.50, computed to June 1st. [Signed] B. E. Adkins, Cashier." Mr. Rippe paid the $162.50 interest, signed the note referred to in plaintiff's letter "E. A. Rippe," and returned it to plaintiff, and plaintiff stamped the original note, "Paid June 8, 1909," and sent the same to Mr. Rippe at Madison. All this took place without notice to or knowledge of the defendant Thompson, and nothing was ever said to him in regard to the matter or any intimation that plaintiff considered Thompson a party to the transaction or in any wise liable on either note or for the loan during Mr. Rippe's lifetime. On the 20th of July, 1908, Mr. Rippe made an application to the board of railroad commissioners for a license to transact business as a public warehouseman, which contained the following statement: "The individual name of each person interested as owner or principal in the management of said elevator or warehouse is W. I. Thompson, John Larkin & E. A. Rippe." But this was done without the knowledge or consent of the defendant Thompson, and may have been intended to simply mean that Thompson and Larkin were only "interested as owner" of the elevator. In August, 1910, after Mr. Rippe's death, the plaintiff filed an account, verified

by B. E. Adkins, cashier, with the administrator of Mr. Rippe's estate, for the whole amount of the note and $181.66 interest which amount, after deducting the amount on deposit to the credit of E. A. Rippe, in plaintiff's bank, leaving a balance of $2,519.34, was allowed by the administrator. The estate, however, was insolvent, and the sum of $1,088.36 is all that was ever paid. At the close of the evidence, upon the direction of the court, the jury returned a verdict for the defendant Thompson, whereupon judgment was entered, dismissing the action as to defendant Thompson and awarding him his costs. From this judgment, plaintiff appeals.

While there is no allegation in the complaint of the existence of a partnership, it was the theory of plaintiff's counsel on the trial, and upon this appeal as well, that a copartnership existed between the said E. A. Rippe, John Larkin, and the defendant Thompson. It is a significant fact, however, that, while Larkin was within the jurisdiction of the court and was present at the trial, he was not joined as a defendant in this action or any attempt whatever made to hold him liable as a partner for the indebtedness mentioned in the complaint. He was present at the trial and testified as a witness—and, it must be said, a willing witness—for the plaintiff. It is upon his testimoney chiefly, that plaintiff relies to show the existence of such copartnership, and he did testify that Rippe operated the elevator "for himself and for Mr. Thompson and myself." "We were interested in it." "He conducted the business under the name of E. A. Rippe Co." "They [the profits] were divided between the three of us, so far as we knew." But he also testified that "we [meaning himself and Thompson] had nothing to do with operating it;" that there was no partnership agreement, and that there never was any agreement as to a company name; that neither himself nor Thompson ever furnished, or agreed to furnish, any of the capital for carrying on the business or took any part in the business, or that they ever received, or expected any, statement from Rippe in regard to the business transacted, or whether the business was carried on at a profit or at a loss.

Without going into a discussion of the law of copartnership, we fail to find in the facts as they appear in this record any of the elements that enter into the creation of a copartnership. The

one transaction of executing the note in question is the only thing that in any way connected the defendant Thompson with the business, and this was in the nature of an agency transaction, which was ratified by Rippe on his return. It was recognized as such by the bank officials, who from their letters looked solely to him for the payment of the interest when it came due, and finally accepted his individual note in consideration for the cancellation and surrender of the note executed by Thompson.

A number of alleged errors are assigned by appellant, based upon the admission and rejection of testimony by the court. These have all been examined and received careful consideration, but we fail to find wherein appellant has been harmed by any of these rulings, nor that the result could have been different had these rulings, except the last, which was the direction of a verdict for defendant, been in plaintiff's favor.

Failing to find any error, the judgment of the trial court is affirmed.